Filed 12/8/22  P. v. Garcia CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JOSEPH GARCIA,

    Defendant and Appellant.

E077916

(Super.Ct.No. CR47377)

OPINION

APPEAL from the Superior Court of Riverside County. Charles J. Koosed, Judge. Affirmed.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1994, a jury convicted Joseph Garcia of second degree murder arising from his involvement in a gang-related shooting. In 2019, he petitioned for relief under a new provision allowing people serving time for certain murder convictions to petition to take advantage of recent changes in the law. (Pen. Code, former § 1170.95, Stats. 2022, ch. 58, § 10, eff. June 30, 2022.)[1] After a hearing, the trial judge found beyond a reasonable doubt that Garcia was guilty for implied-malice murder, a still valid theory after changes to the substantive definition of murder.

Garcia argues the trial judge erred in several respects. First, he argues the judge couldn't find him guilty of implied-malice murder without finding he acted with reckless indifference to human life. However, the "reckless indifference" requirement applies in the context of a prosecution for felony murder. Implied malice stands on its own as a valid basis for a murder conviction. Second, Garcia argues he is entitled to a new hearing because the trial judge relied on materials inadmissible after the later enactment of Senate Bill No. 775 (2021-2022 Reg. Sess) (Stats. 2021, ch. 551) (SB 775). We conclude the evidence didn't make a difference to the judge's conclusions and any error was harmless. Third, Garcia argues there was insufficient evidence he acted with implied malice. We conclude the evidence was sufficient. Finally, Garcia argues he has a right to a jury trial on his petition. We disagree.

We therefore affirm the order denying Garcia's petition.

---

[1] Effective June 30, 2022, Penal Code section 1170.95 has been renumbered as section 1172.6, without any substantive change. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.) Because Garcia brought his petition before the change, we will use "section 1170.95" to refer to the provision and to Garcia's petition.

# I

# FACTS

At the time of these events, Garcia was a member or former member and associate of the Elsinore Vatos Locos (EVL), a criminal street gang in Lake Elsinore. Garcia's codefendant, Albert Guillen, was an EVL member.

In early November 1992, Guillen had a physical fight with another young man on the street in Lake Elsinore. A witness named Eric V. described the fight to the jury. He said the fight was between Guillen and a young African American man. Guillen was losing the fight badly when someone pulled out a gun and handed it to him. Guillen pointed the gun in the face of the other man, but then handed the gun back. At that point people started coming out of a nearby business, and the fight broke up. As Guillen and his fellows walked off, they yelled out "EVL." Eric V. responded, "F-U-C-K EVL." This turned out to be an ill-advised remark.

On November 15, 1992, Eric V. saw Garcia in his neighborhood as he was working on the transmission of his truck with his friend Paul R. Eric V. approached Garcia to talk to him about recent violence in the neighborhood between local Latinos and African Americans. Eric V. testified he thought Garcia might be able to do something to calm the situation. After the two had talked, Eric V. went back to his truck with another man, Brian M., who bought a small amount of marijuana from him and gave him a ride back to his truck.

About 15 to 20 minutes later, Garcia, Guillen, Tapia, and some other EVL members approached Eric V. at his truck. Eric V. said he recognized Guillen from the prior incident. He said one of the men came up to him and said, "aren't you the one from Heald Street that said F-U-C-K EVL and Joe Garcia?" Eric V. said at that point the men were swarming him. He said he saw Garcia and started saying "No, Joe, no," but he started getting hit. Garcia and at least two other gang members then beat and pistol-whipped Eric until he was unconscious.

Paul R. said he heard yelling and got out from under Eric V.'s car and saw Guillen holding Eric V. from behind and Garcia hitting him in the face, then another man ran up with an automatic weapon and hit Eric V. in the head with the gun. Paul R. fled around the corner for fear of being shot, and Eric V. didn't regain consciousness until he was in an ambulance to be taken to the hospital.

While the other men were beating Eric V., Tapias chased Brian M. as he ran back to his car. Tapia was armed with a handgun and the gun went off as the two struggled, and Tapia suffered a gunshot wound to the stomach. Brian M. was then shot twice, including a fatal shot to the head. We know from the preliminary hearing transcript in his case that the shooter was EVL member James Coronado.

On March 29, 1994, a Riverside County jury convicted Garcia of second murder (Pen. Code, § 187) and assault with a firearm (Pen. Code, § 245, subd. (a)), found he committed the crimes for the benefit of a street gang (Pen. Code, § 186.22, subd. (b)(1)),

and found a principal was armed with a firearm. (Pen. Code, § 12022, subd. (a)(1)). Garcia admitted two serious-felony priors and a prison prior.

The trial judge sentenced Garcia to 26 years to life in prison. The sentence was composed of a sentence of 15 years to life for the second degree murder conviction, one year consecutive because a principal was armed, 10 years consecutive for the two serious-felony priors, and concurrent or stayed terms for the remaining conviction and allegations. Garcia appealed, and this court affirmed. (*People v. Guillen* (Feb. 2, 1996, E014756) [nonpub. opn.].)

On March 27, 2019, Garcia filed a petition for resentencing under new Penal Code section 1170.95 and, on September 25, 2020, the trial judge issued an order to show cause.

At his original trial, the People prosecuted Garcia under a then still valid natural and probable consequences theory. (*People v. Guillen*, *supra*, E014756 at pp. 4, 10.) Garcia's section 1170.95 petition argued he was entitled to resentencing because the "natural and probable consequences" theory is no longer a valid basis for a murder conviction and he could not be convicted of murder under an implied-malice theory. The People responded that Garcia could still be convicted of murder because he had acted with implied malice.

After considering the parties' arguments, the transcripts from the original proceedings, and the record of conviction, the trial judge denied Garcia's petition. He concluded the Legislature had eliminated the "natural and probable consequences" theory

as a basis for a murder conviction, but that implied malice remained a tenable basis. The judge explained implied malice requires proof that, among other things, Garcia had deliberately acted with conscious disregard for human life.

The judge found beyond a reasonable doubt that Garcia did act with such conscious disregard for human life, which directly led to the victim's death. "[T]he evidence is sufficient to establish proximate causation and malice beyond a reasonable doubt . . . . With respect to malice, as explained above, defendant acted with conscious disregard for human life when he led the armed group to attack [Eric V.] in retaliation for a perceived insult to the gang; defendant had a mindset to commit violence and certainly knew deadly violence was possible given the circumstances *he created*. Having set these circumstances in motion, defendant fled at some point, leaving bystanders, witnesses, and stragglers to contend with his violent melee without doing anything to calm the fight. With respect to causation, defendant's own intentional and highly dangerous actions set into motion the series of events that *directly* led to [Brian M.'s] death."

The trial judge denied Garcia's petition. Garcia filed a timely notice of appeal.

## II

## ANALYSIS

A. *Reckless Indifference to Human Life*

Garcia argues it was improper for the trial judge to uphold his murder conviction without finding he had acted with reckless indifference to human life. However, the law is very clear that reckless indifference is the standard for felony-murder cases. This was

6

an implied-malice case, where conscious disregard for human life is the standard. We have already held as much in *People v. Clements* (2022) 75 Cal.App.5th 276, 290 (*Clements*), and we see no reason to depart from our prior precedent.

As we explained in *Clements*, effective January 1, 2019, the Legislature changed the substantive definition of murder by enacting Senate Bill No. 1437 (2017-2018 Reg. Sess.). The new law was designed to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in an enumerated underlying felony who acted with reckless indifference to human life. (*Ibid.*)

Most relevant to this case, the Legislature eliminated the natural and probable consequences doctrine, which allowed a conviction for second degree murder even without evidence of malice. (*Clements*, *supra*, 75 Cal.App.5th at p. 290.) As amended, Penal Code section 188 now provides that malice may *not* "be imputed to a person based solely on his or her participation in a crime." (Pen. Code, § 188, subd. (a)(3).) Thus, the natural and probable consequences doctrine of murder liability is no more, and instead, "to be convicted of murder, a principal in a crime shall act with malice." (*Clements*, at p. 290.)

However, the definition of malice has not changed. (*Clements*, *supra*, 75 Cal.App.5th at p. 298.) Malice may be either express or implied. (*Id*. at p. 299.) Malice is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (Pen. Code, § 188, subd. (a)(1).) Malice is implied "when no

considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188, subd. (a)(2).) Implied malice has both a physical and a mental component. (*Clements*, at pp. 289-290.) The physical component is satisfied by the performance of an act, the natural consequences of which are dangerous to life. (*Id.* at p. 290.) The mental component is the requirement that the "*defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life*.'" (*Ibid*., italics added.)

As our Supreme Court has explained, "notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile* (2020) 10 Cal.5th 830, 850.) That means implied-malice liability is still viable for aiders and abettors who act with conscious disregard for human life. Indeed, in *Clements*, we affirmed denial of a section 1170.95 petition where the defendant did not kill the victim but acted with implied malice precisely because the evidence supported finding "[her] act of requesting and coordinating the assault on [the victim] was deliberate and performed with knowledge of the danger to, and conscious disregard for, his life." (*Clements*, *supra*, 75 Cal.App.5th at p. 299.)

Garcia argues SB 775 eliminates implied malice as a basis for murder liability and instead requires a showing of "reckless indifference to human life" in all such cases. We don't agree.

Effective January 1, 2022, SB 775 amended section 1170.95 to provide that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may petition for relief. (Pen. Code, § 1170.95, subd. (a).) We have already concluded this change did not abrogate traditional implied-malice murder and see no basis for departing from our holding. (*Clements*, *supra*, 75 Cal.App.5th at p. 301; accord *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 590 ["for second degree murder based on implied malice, there is no imputation of malice because . . . the direct aider and abettor must have the same mental state as the actual perpetrator of the charged crime: the direct aider and abettor must act with knowledge that *the act* is dangerous to human life and with conscious disregard for human life"].)

B. *Evidence Inadmissible Under Senate Bill 775*

In ruling on Garcia's petition, the trial judge considered some materials not admissible under the Evidence Code. SB 775 has clarified the rules of the Evidence Code apply to hearings under section 1170.95. If SB 775 applies to Garcia's case (which we assume it does), the court considered inadmissible evidence. However, after careful review, we conclude the consideration of that evidence was harmless.

9

### 1. *Additional facts*

The People's written response to the trial court's order to show cause indicated they would bring the underlying "trial transcripts in [their] possession to the hearing." The People also contended the trial judge could consider reliable hearsay and attached a transcript of the testimony of Christopher Garcia (appellant's brother) and a sheriff's investigator from the preliminary hearing in the case against James Coronado, which was filed separately from the case against Garcia and Guillen.

Garcia initially agreed the judge could consider reliable hearsay, and he submitted this court's opinion from his original appeal, a transcript from the preliminary hearing in his case, and a probation report. Later, however, Garcia changed his mind and objected to reliance on the preliminary hearing testimony in Coronado's case.

The trial judge concluded he "may consider reliable hearsay and other forms of evidence," particularly Christopher Garcia's preliminary hearing testimony from the Coronado case. In his written order, the judge said his rendition of the facts came "from various transcripts provided by the parties and the opinion of the Court of Appeal in [appellant's] direct appeal," and the order referred to the preliminary hearing testimony from the Coronado case.

### 2. *Analysis*

Until recently, case law permitted trial judges to consider reliable hearsay at hearings under section 1170.95. (*People v. Williams* (2020) 57 Cal.App.5th 652, 660-663.) That changed when SB 775 became effective on January 1, 2022.

SB 775 placed limitations on what trial courts may examine. "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (Pen. Code, § 1170.95, subd. (d)(3).)

The provision relating to prior appellate decisions "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing." (*Clements*, *supra*, 75 Cal.App.5th at p. 292.) That's not an issue in this case, however, because the trial judge "limited consideration of the opinion of the Court of Appeal to portions that touch on relevant and admissible evidence in the record of conviction." (Italics added.)

The question we face is whether the trial judge committed prejudicial error by admitting transcripts of preliminary hearings, particularly testimony from the Coronado preliminary hearing. The People concede the current record does not support finding a hearsay exception would make the transcript admissible, as explicitly required under SB 775.

11

We assume without deciding that the evidentiary limits in SB 775 either clarify what the law was at the time of Garcia's hearing or apply retroactively and it was error for the trial judge to consider the preliminary hearing transcript. (See *People v. Owens* (2022) 78 Cal.App.5th 1015, 1026-1027 [declining to resolve whether SB 775 applies retroactively]; see also *id.* at p. 1028, Tangeman, J., concurring ["Because the evidentiary portions of Senate Bill 775 'clarify[] the discussion' in *People v. Lewis* (2021) 11 Cal.5th 952, 970-972 [citation], they may come within the rule that legislative clarification of existing law applies to conduct that precedes its enactment"].)

Even assuming the trial judge erred, we must determine whether the error was prejudicial. "Because a sentence modification under section 1170.95 is an act of lenity and not a criminal trial, wrongful admission of evidence does not implicate defendant's constitutional rights." (*People v. Anderson* (2022) 78 Cal.App.5th 81, 90 [Fifth Amendment rights not implicated] [cleaned up]; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 [Sixth Amendment rights not implicated].) As a result, we evaluate prejudice under *People v. Watson* (1956) 46 Cal.2d 818, 836 and ask whether it is reasonably probable the outcome would have been more favorable to Garcia if the court hadn't admitted the evidence.

We conclude there is no reasonable probability the trial judge would have granted Garcia's petition if he had excluded the preliminary hearing transcript from Coronado's case. As the judge himself explained, "the preliminary hearing testimony . . . does not change any of the court's findings and in fact only bolstered the conclusion that [Garcia]

12

acted with malice." In other words, the judge made his findings and reached his conclusion based on admissible evidence Garcia doesn't challenge, and independently of the preliminary hearing transcript. We review that evidence below in considering Garcia's substantial evidence challenge, but here conclude that evidence was so strong and the preliminary hearing testimony so duplicative of that evidence that it's not likely the trial judge would have come to a conclusion more favorable to Garcia if he hadn't also reviewed the preliminary hearing transcript.

C. *Sufficient Evidence of Implied Malice*

Garcia argues the admissible evidence is not sufficient to support the trial judge's finding, beyond a reasonable doubt, he acted with implied malice.

1. *Standard of review*

Our "job on review is different from the trial judge's job in deciding [a section 1170.95] petition." (*Clements*, *supra*, 75 Cal.App.5th at p. 298.) "While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, [the reviewing court's] job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid*.) We review the whole record in the light most favorable to the judgment and decide whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.)

13

Second degree murder is the unlawful killing of a human being with malice aforethought, but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder. (*Clements*, *supra*, 75 Cal.App.5th at p. 299.) Malice may be either express or implied. (*Ibid*.) Express malice is when a defendant manifests an intention to kill. (*Ibid*.) "Malice is implied when the killing is proximately caused by an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." (*Ibid*. [cleaned up].) "Thus, implied malice includes an objective component—an act that is dangerous to life—and a subjective component—the defendant's awareness of and disregard for the danger." (*Ibid*.)

The trial judge denied Garcia's petition because he found Garcia had acted with implied malice when he led a group of gang members—some armed—into a violent attack on Eric V. in retaliation for his comment which they viewed to be disparaging the gang and Garcia. The judge found Garcia's "malicious state of mind was not limited to [Eric]; his malice was displayed by intentionally creating a situation where there was a possibility that *somebody* would be killed and continuing to act despite knowing the risk." He concluded the conduct and circumstances showed Garcia "acted with conscious disregard for human life," that he "had a mindset to commit violence and certainly knew deadly violence was possible given the circumstances *he created*."

14

The evidence was sufficient to support these findings. It was undisputed Garcia and the men who were with him were members and affiliates of EVL. It was also undisputed Coronado, Tapia, and the person who pistol-whipped Eric V. were armed, and the trial judge could have reasonably inferred Garcia knew they were armed. The record clearly establishes Garcia approached Eric V. in broad daylight and the attack on him was vicious. The evidence also supported finding Garcia led the attack. Paul R. testified the assault began with Guillen holding Eric V. while Garcia beat him in the face. The attack happened after Eric V. had the temerity to approach him and advocate for minimizing violence between his gang and African Americans in the neighborhood. Garcia then led his fellows down the street and immediately confronted him. According to Eric V., one of the men accused him of saying "F-U-C-K EVL and Joe Garcia." While it's true the preliminary hearing transcript, which shouldn't have been admitted, contained evidence Garcia was a former president of EVL and a leader in that sense, the evidence which *was* admissible established Garcia initiated the attack and was its leader. The judge could also infer Garcia was a leader among his gang members generally from the fact that Eric V. approached him, rather than other members, to encourage him to help reduce racial conflict involving other members of his gang.

Garcia also argues there was no evidence he led the attack because "the fight seemed to have been an effort for Guillen to get even." While we agree the court *could have* made that inference, under substantial evidence review we affirm if the judge could reasonably have made the inference *he did make*. (*People v. Pettigrew* (2021) 62

15

Cal.App.5th 477, 494 ["defendant asks that we substitute our judgment for that of the jury and choose an inference favorable to him rather than a reasonable inference that is favorable to the judgment"].) Here, the judge's inference was well founded.

There was also sufficient evidence of proximate causation. Garcia points out that it was Brian M., not Eric V. who was the victim of the slaying and suggests the evidence didn't support finding his conduct was the proximate cause of the killing. However, the trial judge found Garcia's "actions directly led to the situation wherein [Brian] was murdered, and his actions were the proximate cause of the death." He found "[t]he struggle between Tapia, Coronado, and [Brian], and the ensuing shooting and death were reasonably foreseeable as natural and probable consequences of [Garcia's] own actions." We conclude the evidence about the nature of the fight, Garcia's knowledge of his fellows, leadership role in the confrontation, and the likelihood of a conflagration that would involve others are enough to support these findings.

Finally, Garcia points us to a series of appellate cases concluding the evidence was either sufficient or insufficient to sustain an implied-malice verdict. None of these cases is either controlling or persuasive for Garcia. "Reviewing the sufficiency of evidence . . . necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value." (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138.) Here, the evidence that Garcia acted with conscious disregard for the lives of others is well supported by the record.

D. *Right to a Jury Trial*

Finally, Garcia argues he has a Sixth Amendment right to have a jury decide his petition under *Apprendi v. New Jersey* (2000) 530 U.S. 466. The Courts of Appeal have rejected this position. (See, e.g., *People v. James* (2021) 63 Cal.App.5th 604, 610-611.) "Because the authorization of retroactive relief in Senate Bill No. 1437 was an act of lenity, the Legislature was free to condition the availability of such relief on the convicted person prevailing at an evidentiary hearing conducted pursuant to the nonjury procedure set forth in section 1170.95." (*Ibid.*) "The rule of *Apprendi* does not apply because the procedure is designed solely to permit the reduction of a defendant's punishment; no increase is possible over the sentence that has already become final." (*Ibid.*)

## III

## DISPOSITION

We affirm the trial court's order denying Garcia's petition for resentencing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

17